IN THE UNITED STATES DISTRICT COURT IN AND FOR THE DISTRICT OF FLORIDA
(MIAMI DIVISION)

Case No.:

WAYNE PORTALATIN;
TIMOTHY ROYSTER
Plaintiff(s),

vs.

ROLLING LOUD, LLC;
IPS NATIONWIDE, INC.;
SOUTH FLORIDA STADIUM, LLC
Defendant(s).

_______________________________/

## COMPLAINT

COMES NOW, the Plaintiffs **Wayne Portalatin** ("Portalatin"), and **Timothy Royster** ("Royster") (hereinafter referred to jointly as "Plaintiffs"), and file this lawsuit against the Defendants **Rolling Loud, LLC** ("Rolling Loud"), **IPS Nationwide, Inc.** ("IPS"), and **South Florida Stadium, LLC** ("SFS"), as follows:

### General Allegations Applicable to all Counts

1. This is an original action within the jurisdiction of this Federal Court as the amount in controversy and the amount of damages claimed by the Plaintiffs in good faith in this lawsuit exceed $75,000.00 exclusive of interest, costs, and attorney's fees pursuant to 28 U.S. Code § 1332(a), and this action is between citizens of different States as

a. Defendant Rolling Loud is a Florida registered company maintaining its principal place of business in Miami-Dade County, Florida.

b. Defendant IPS is a Florida registered corporation maintaining its principal place of business in Orange County, Florida.

c. Defendant SFS is a Florida registered company with its principal place of business in Miami-Dade County, Florida.

d. Plaintiff Portalatin is a citizen of and domiciled in the State of Connecticut.

e. Plaintiff Royster is a citizen of and domiciled in the State of North Carolina.

2. Therefore, this Court has jurisdiction over this matter pursuant to 28 U.S. Code § 1332(a).

3. Venue is proper in the Southern District of Florida pursuant to 28 U.S. Code § 1391(b)(2), because the Southern District of Florida is where a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.

4. Jurisdiction by this Court over Rolling Loud is proper, as Rolling Loud transacts business and is registered to do business in the State of Florida pursuant to Florida Statutes § 48.193, and the tortious acts alleged herein by Rolling Loud were committed in Florida and caused injury to the Plaintiffs while in the State of Florida.

5. Jurisdiction by this Court over IPS is proper, as IPS transacts business and is registered to do business in the State of Florida pursuant to Florida Statutes § 48.193, and the tortious acts alleged herein by IPS were committed in Florida and caused injury to the Plaintiffs while in the State of Florida.

6. Jurisdiction by this Court over SFS is proper, as SFS transacts business and is registered to do business in the State of Florida pursuant to Florida Statutes § 48.193, and the tortious acts alleged herein by SFS were committed in Florida and caused injury to the Plaintiffs while in the State of Florida.

7. All conditions precedent to this cause of action have been pled or waived.

8. Florida law applies to the instant action as the State of Florida is where the entirety of the incident occurred, and where a majority of the witnesses and parties are located, and thus Florida is the State which has the most significant relationship to the subject lawsuit.

9. All counts and allegations herein have been plead in the alternative pursuant to Federal Rule of Civil Procedure 8(a). *See Continental Insurance Company v. Lopez-Castro*, 2008 WL 11333415, at *8 (S.D. Fla., 2008).

**COUNT 1**
(Vicarious Liability – IPS)
[Portalatin]

10. Plaintiff repeats and realleges paragraphs 1-9.

11. At all times material IPS was operating as a Florida licensed security agency under Florida Statutes Chapter 493, responsible for providing security guards and security related services at the 2024 Rolling Loud Festival and Concert, on December 14-15, 2024, which took place at the Hard Rock Stadium located at 347 Don Shula Dr., Suite 102 Miami Gardens, FL 33056 (the "subject premises").

12. At all times material IPS employed, directed or controlled, security guards[1] at the Rolling Loud Festival, who at all times were acting in the course and scope of their employment and/or agency relationship for the express goal of furthering the interests and purpose of their employer and/or principal IPS; based on the following facts;

a. IPS was hired to provide security services for the Rolling Loud Festival.

b. Pursuant to its agreement to provide security services at the Rolling Loud Festival, IPS as a licensed security agency under Fla. Statutes Ch. 493, was required to provide licensed and competent security guards who were properly trained and qualified to provide security services.

---

[1]The names and identities of these individuals shall be requested in discovery and the Complaint if necessary shall be supplement to include their names.

c. At all times IPS was required to direct, and supervise, the conduct of its security guards including the degree of lawful or appropriate force or physical restraint they could exercise while carrying out their security duties.

d. IPS provided training, directives, procedures, and post orders to its security guards which they were required to follow in carrying out their duties during the relevant time period.

e. At all times IPS' security guards were required to wear uniforms, and the details of their work and their work schedules were dictated by IPS.

13. On or about December 14-15, 2024, Portalatin was lawfully on the subject premises as a business invitee when IPS' security guards acting in the course and scope of their employment with IPS used excessive and unlawful force in carrying out their duties resulting in severe injuries to Portalatin when he was struck and injured by various IPS security guards unnecessarily and without provocation. At all times this conduct on the part of IPS's security guards was perpetrated with the express purpose of furthering the interests of their employer and principal, IPS.[2]

14. At all times material IPS's security guards' acts of attempting to physically restrain, strike, or subdue Portalatin was the express activity IPS had employed them to perform, and did occur during the Rolling Loud Festival and on the subject premises of the Hard Rock Stadium which was well within the time and space limits IPS authorized its security guards to carry out their duties, and at all times the excessive and unlawful use of force by IPS' security guards which resulted in Portalatin being struck and injured, was activated by the express purpose of serving the interests, instructions, and goals of IPS.

15. Accordingly, IPS is vicariously liable to Portalatin for the unlawful, and grossly negligent conduct, of its security guards and their use of excessive physical force resulting in injury to Portalatin.

---

[2] *See Trabulsy v. Publix Super Mkt., Inc.,* 138 So. 3d 553 (Fla. 5th DCA 2014); see also *J.D. v. Fla. Dep't of Juv. Just.*, No. 9:25-cv-80649, 2025 LX 424052, at *7-9 (S.D. Fla. Sep. 18, 2025).

16. At all times the conduct of IPS' security guards in assaulting and/or striking Portalatin was either intentional or grossly negligent, and IPS actively and knowingly participated in such conduct.

17. Furthermore, the officers, directors, or managers of IPS either knowingly condoned, ratified, or consented, to the actions of its security guards who engaged in the intentional, reckless, and/or grossly negligent assaults on Portalatin.

18. As a direct and proximate result and/or concurring cause of the negligence of IPS as described above, Portalatin, suffered great bodily injury and resulting physical pain and suffering, inability to prove his claim due to loss and/or destruction of evidence, disability, disfigurement, suffering and disability, loss of the capacity for the enjoyment of life, expensive hospitalization, medical nursing care and treatment, loss of past earnings, loss of the ability to earn money in the future, and aggravation of an existing condition. The losses are permanent in nature, and the Portalatin will suffer said losses in the future.

19. Furthermore, the negligent acts of IPS have combined and resulted in an indivisible harm to Plaintiff, including bodily injury and resulting pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

20. The actions of the IPS further caused a bodily injury, to the Plaintiff Portalatin which resulted in an aggravation of an existing disease or physical defect and/or activation of a latent disease or physical defect, which condition cannot be said would have existed apart from the injury, and therefore Plaintiff is entitled for damages for the entire injury or condition suffered.

WHEREFORE, Portalatin, demands jury trial and judgment for general damages, compensatory damages, special damages, and punitive damages, against IPS in which Portalatin alleges in good faith

exceed Seventy-Five Thousand ($75,000.00) Dollars, excluding taxable costs, and whatever other relief this Court deems just and proper.

**COUNT 2**
(Vicarious Liability – IPS)
[Royster]

21. Plaintiff repeats and realleges paragraphs 1-9.

22. At all times material IPS was operating as a Florida licensed security agency under Florida Statutes Chapter 493, responsible for providing security guards and security related services at the 2024 Rolling Loud Festival and Concert, on December 14-15, 2024, which took place at the Hard Rock Stadium located at 347 Don Shula Dr., Suite 102 Miami Gardens, FL 33056 (the "subject premises").

23. At all times material IPS employed, directed or controlled, security guards at the Rolling Loud Festival, who at all times were acting in the course and scope of their employment and/or agency relationship for the express goal of furthering the interests and purpose of their employer and/or principal IPS; based on the following facts;

a. IPS was hired to provide security services for the Rolling Loud Festival.

b. Pursuant to its agreement to provide security services at the Rolling Loud Festival, IPS as a licensed security agency under Fla. Statutes Ch. 493, was required to provide licensed and competent security guards who were properly trained and qualified to provide security services.

c. At all times IPS was required to direct, and supervise, the conduct of its security guards including the degree of lawful or appropriate force or physical restraint they could exercise while carrying out their security duties.

d. IPS provided training, directives, procedures, and post orders to its security guards which they were required to follow in carrying out their duties during the relevant time period.

e. At all times IPS' security guards were required to wear uniforms, and the details of their work and their work schedules were dictated by IPS.

24. On or about December 14-15, 2024, Royster was lawfully on the subject premises as a business invitee when IPS' security guards acting in the course and scope of their employment with IPS used excessive and unlawful force in carrying out their duties resulting in severe injuries to Royster when he was struck and injured by various IPS security guards unnecessarily and without provocation. At all times this conduct on the part of IPS's security guards was perpetrated with the express purpose of furthering the interests of their employer and principal, IPS.

25. At all times material IPS's security guards' acts of attempting to physically restrain, strike, or subdue Royster was the express activity IPS had employed them to perform, and did occur during the Rolling Loud Festival and on the subject premises of the Hard Rock Stadium which was well within the time and space limits IPS authorized its security guards to carry out their duties, and at all times the excessive and unlawful use of force by IPS' security guards which resulted in Royster being struck and injured, was activated by the express purpose of serving the interests, instructions, and goals of IPS.

26. Accordingly, IPS is vicariously liable to Royster for the unlawful, and grossly negligent conduct, of its security guards and their use of excessive physical force resulting in injury to Royster.

27. As a direct and proximate result and/or concurring cause of the negligence of IPS as described above, the Royster, suffered great bodily injury and resulting physical pain and suffering, inability to prove his claim due to loss and/or destruction of evidence, disability, disfigurement, suffering and disability, loss of the capacity for the enjoyment of life, expensive hospitalization, medical nursing care and treatment, loss of past earnings, loss of the ability to earn money in the future, and aggravation of an existing condition. The losses are permanent in nature, and the Royster will suffer said losses in the future.

28. At all times the conduct of IPS' security guards in assaulting and/or striking Royster was either intentional or grossly negligent, and IPS actively and knowingly participated in such conduct.

29. Furthermore, the officers, directors, or managers of IPS either knowingly condoned, ratified, or consented, to the actions of its security guards who engaged in the intentional, reckless, and/or grossly negligent assaults on Royster.

30. Furthermore, the negligent acts of IPS have combined and resulted in an indivisible harm to Plaintiff, including bodily injury and resulting pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

31. The actions of the IPS further caused a bodily injury, to the Plaintiff Royster which resulted in an aggravation of an existing disease or physical defect and/or activation of a latent disease or physical defect, which condition cannot be said would have existed apart from the injury, and therefore Plaintiff is entitled for damages for the entire injury or condition suffered.

WHEREFORE, Royster, demands jury trial and judgment for general damages, compensatory damages, special damages, and punitive damages,[3] against IPS in which Royster alleges in good faith exceed Seventy-Five Thousand ($75,000.00) Dollars, excluding taxable costs, and whatever other relief this Court deems just and proper.

---

[3]*See McNamara v. Fla. Power & Light Co.*, No. 17-cv-81181-BLOOM/Hopkins, 2018 LX 36655, at *18-19 (S.D. Fla. Jan. 26, 2018) (quoting *Cohen v. Office Depot, Inc.*, 184 F.3d 1292, 1299 (11th Cir. 1999)).

**COUNT 3**
(Negligence – IPS)
[Portalatin]

32. Plaintiff repeats and realleges paragraphs 1-9.

33. At all times material IPS was operating as a Florida licensed security agency under Florida Statutes Chapter 493, responsible for providing security guards and security related services at the 2024 Rolling Loud Festival and Concert, on December 14-15, 2024, which took place at the Hard Rock Stadium located at 347 Don Shula Dr., Suite 102 Miami Gardens, FL 33056 (the “subject premises”).

34. At all times material IPS had been hired or retained by SFS and/or Rolling Loud, to provide both security and crowd control for the 2024 Rolling Loud Festival, accordingly IPS owed a nondelegable duty to business invitees on the subject premises where the 2024 Rolling Loud Festival was being held provide reasonable security and crowd control services including but not limited to the duty to;

a. Employ licensed and qualified security guards in accordance with Florida Statutes Ch. 493.

b. Ensure that all of its security guards were properly trained to provide security and crowd control at large outdoor events such as the 2024 Rolling Loud Festival.

c. Ensure that all of its security guards were properly trained to resolve conflicts without resorting to excessive physical force;

d. Use reasonable security measures and generally accepted practices to prevent foreseeable criminal activity including assaults and attacks on business invitees on the subject premises.

e. Ensure that all of its security guards refrained from the use of active physical violence and/or assault in carrying out their duties.

f. Ensure that all of its security guards in acting in the course and scope of their employment, did not engage in physical assault or abusive behavior.

35. On or about December 14-15, 2024, IPS breached the foregoing nondelegable duties of care which it owed to business invitees on the premises including Portalatin, when it engaged in the following acts of negligence.

36. Portalatin was lawfully on the subject premises for business purposes when he encountered security guards employed by IPS who were at the time acting in the course and scope of their employment.

37. Subsequently, IPS' security guards without warning, provocation, and without cause, proceeded to unlawfully restrain, subdue, strike, and otherwise attack Portalatin, while in the course and scope of their employment and in furtherance of the wishes of their employer IPS.

38. At all times IPS was charged with the nondelegable duty imposed in it via contract and statute to guard against foreseeable criminal activity such as the assault perpetrated against Portalatin, [4] and thus IPS breached this duty when it failed to take reasonable security measures which would have prevented Portalatin assault and injuries.

39. Furthermore, IPS is also liable to Portalatin for its negligence in failing to supervise, train, and screen the security guards it employed and/or directed, thus permitting them to severely injure Portalatin while exercising unlawful and excessive force in the performance of their security duties when they assaulted and battered Portalatin, while IPS' security guards were well within the time and space limits IPS authorized its security guards to carry out their duties, and during which these were motivated by the express purpose of serving the interests, instructions, and goals of IPS.

40. At all times the conduct of IPS' security guards in assaulting and/or striking Portalatin was either intentional or grossly negligent, and IPS actively and knowingly participated in such conduct.

[4] *Vazquez v. Lago Grande Homeowners Ass'n*, 900 So. 2d 587, 593 (Fla. 3d DCA 2004)

41. Furthermore, the officers, directors, or managers of IPS either knowingly condoned, ratified, or consented, to the actions of its security guards who engaged in the intentional, reckless, and/or grossly negligent assaults on Portalatin.

42. As a direct and proximate result and/or concurring cause of the negligence of IPS as described above, Portalatin, suffered great bodily injury and resulting physical pain and suffering, inability to prove his claim due to loss and/or destruction of evidence, disability, disfigurement, suffering and disability, loss of the capacity for the enjoyment of life, expensive hospitalization, medical nursing care and treatment, loss of past earnings, loss of the ability to earn money in the future, and aggravation of an existing condition. The losses are permanent in nature, and the Portalatin will suffer said losses in the future.

43. Furthermore, the negligent acts of IPS have combined and resulted in an indivisible harm to Plaintiff, including bodily injury and resulting pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

44. The actions of the IPS further caused a bodily injury, to the Plaintiff Portalatin which resulted in an aggravation of an existing disease or physical defect and/or activation of a latent disease or physical defect, which condition cannot be said would have existed apart from the injury, and therefore Plaintiff is entitled for damages for the entire injury or condition suffered.

WHEREFORE, Portalatin, demands jury trial and judgment for general damages, compensatory damages, special damages, and punitive damages, against IPS in which Portalatin alleges in good faith exceed Seventy-Five Thousand ($75,000.00) Dollars, excluding taxable costs, and whatever other relief this Court deems just and proper.

**COUNT 4**
(Negligence – IPS)
[Royster]

45. Plaintiff repeats and realleges paragraphs 1-9.

46. At all times material IPS was operating as a Florida licensed security agency under Florida Statutes Chapter 493, responsible for providing security guards and security related services at the 2024 Rolling Loud Festival and Concert, on December 14-15, 2024, which took place at the Hard Rock Stadium located at 347 Don Shula Dr., Suite 102 Miami Gardens, FL 33056 (the "subject premises").

47. At all times material IPS had been hired or retained by SFS and/or Rolling Loud, to provide both security and crowd control for the 2024 Rolling Loud Festival, accordingly IPS owed a nondelegable duty to business invitees on the subject premises where the 2024 Rolling Loud Festival was being held provide reasonable security and crowd control services including but not limited to the duty to;

a. Employ licensed and qualified security guards in accordance with Florida Statutes Ch. 493.

b. Ensure that all of its security guards were properly trained to provide security and crowd control at large outdoor events such as the 2024 Rolling Loud Festival.

c. Ensure that all of its security guards were properly trained to resolve conflicts without resorting to physical force;

d. Use reasonable security measures and generally accepted practices to prevent foreseeable criminal activity including assaults and attacks on business invitees on the subject premises.

e. Ensure that all of its security guards refrained from the use of active physical violence and/or assault in carrying out their duties.

f. Ensure that all of its security guards in acting in the course and scope of their employment, did not engage in physical assault or abusive behavior.

48. On or about December 14-15, 2024, IPS breached the foregoing nondelegable duties of care which it owed to business invitees on the premises including Royster, when it engaged in the following acts of negligence.

49. Royster was lawfully on the subject premises for business purposes when he encountered security guards employed by IPS who were at the time acting in the course and scope of their employment.

50. Subsequently, IPS' security guards without warning, provocation, and without cause, proceeded to unlawfully restrain, subdue, strike, and otherwise attack Royster, while in the course and scope of their employment and in furtherance of the wishes of their employer IPS.

51. At all times IPS was charged with the nondelegable duty imposed in it via contract and statute to guard against foreseeable criminal activity such as the assault perpetrated against Royster, and thus IPS breached this duty when it failed to take reasonable security measures which would have prevented Royster assault and injuries.

52. Furthermore, IPS is also liable to Royster for its negligence in failing to supervise, train, and screen the security guards it employed and/or directed, thus permitting them to severely injure Royster while exercising unlawful and excessive force in the performance of their security duties when they assaulted and battered Royster, while IPS' security guards were well within the time and space limits IPS authorized its security guards to carry out their duties, and during which these were motivated by the express purpose of serving the interests, instructions, and goals of IPS.

53. At all times the conduct of IPS' security guards in assaulting and/or striking Royster was either intentional or grossly negligent, and IPS actively and knowingly participated in such conduct.

54. Furthermore, the officers, directors, or managers of IPS either knowingly condoned, ratified, or consented, to the actions of its security guards who engaged in the intentional, reckless, and/or grossly negligent assaults on Royster.

55. As a direct and proximate result and/or concurring cause of the negligence of IPS as described above, the Royster, suffered great bodily injury and resulting physical pain and suffering, inability to prove his claim due to loss and/or destruction of evidence, disability, disfigurement, suffering and disability, loss of the capacity for the enjoyment of life, expensive hospitalization, medical nursing care and treatment, loss of past earnings, loss of the ability to earn money in the future, and aggravation of an existing condition. The losses are permanent in nature, and the Royster will suffer said losses in the future.

56. Furthermore, the negligent acts of IPS have combined and resulted in an indivisible harm to Plaintiff, including bodily injury and resulting pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

57. The actions of the IPS further caused a bodily injury, to the Plaintiff Royster which resulted in an aggravation of an existing disease or physical defect and/or activation of a latent disease or physical defect, which condition cannot be said would have existed apart from the injury, and therefore Plaintiff is entitled for damages for the entire injury or condition suffered.

WHEREFORE, Royster, demands jury trial and judgment for general damages, compensatory damages, special damages, and punitive damages, against IPS in which Royster alleges in good faith exceed Seventy-Five Thousand ($75,000.00) Dollars, excluding taxable costs, and whatever other relief this Court deems just and proper.

**COUNT 5**
(Vicarious Liability – Rolling Loud)
[Portalatin]

58. Plaintiff repeats and realleges paragraphs 1-9.

59. At all times material Rolling Loud was the operator, promoter and sponsor of the 2024 Rolling Loud Festival and Concert, on December 14-15, 2024, which took place at the Hard Rock Stadium located at 347 Don Shula Dr., Suite 102 Miami Gardens, FL 33056 (the “subject premises”).

60. Additionally, Rolling Loud through its company and officers’ primary business is the promotion, staging, marketing, coordination, and hosting of large-scale music festivals such as the 2024 Rolling Loud Festival and Concert which it has hosted on the subject premises and throughout the country for several years.

61. Prior to the subject incident, Rolling Loud, entered into contracts and agreements with the owner of the subject premises and various municipalities including but not limited to Miami-Dade County and the City of Miami Gardens, Florida, which required it to provide adequate security and crowd control for the subject premises for the duration of the 2024 Rolling Loud Festival and Concert.

62. Pursuant to these nondelegable duties which Rolling Loud assumed by contract and by operation of statute and ordinance; Rolling Loud hired IPS to which it delegated its responsibilities and duties to provide security for the subject premises.

63. Accordingly at all times material Rolling Loud employed, directed or controlled, IPS’ activities at the Rolling Loud Festival, and at all times IPS was acting in the course and scope of its agency relationship with Rolling Loud for the express goal of furthering the interests and purpose of Rolling Loud’s successful staging and operation of the 2024 Rolling Loud Festival and in order to carry out Rolling Loud’s obligations to provide security and crowd control for the subject premises; based on the following facts;

a. IPS was the official provider of security and crowd control for the Rolling Loud Festival;

b. Pursuant to its agreement to provide security services for Rolling Loud at the Rolling Loud Festival, IPS as a licensed security agency under Fla. Statutes Ch. 493, agreed to provide security guards who at all times were acting pursuant to the direction and instructions of Rolling Loud as the owner and operator of the Rolling Loud Festival.

c. Rolling Loud provided the required security plans and security protocol which IPS was required to follow for the duration of the Rolling Loud Festival.

d. The amount of security guards, their location, and their work schedule, and the manner in which security was to be provided, was at all times subject to the direction of Rolling Loud, as Rolling Loud had been required to comply with specific security and crowd control requirements by the owner of the venue and city and county municipalities which had granted its operating permit.

64. On or about December 14-15, 2024, Portalatin was lawfully on the subject premises as a business invitee when IPS security guards acting in the course and scope of their agency relationship with Rolling Loud used excessive and unlawful force in carrying out their duties resulting in severe injuries to Portalatin when he was struck and injured by various security guards unnecessarily and without provocation. At all times this conduct on the part of these security guards was perpetrated with the express purpose of furthering the interests of their principal, Rolling Loud.

65. At all times material IPS's security guards' actions while acting for and on behalf of Rolling Loud in attempting to physically restrain, strike, or subdue Portalatin, was the express activity Rolling Loud had hired IPS to perform, and did occur during the Rolling Loud Festival and on the subject premises of the Hard Rock Stadium which was well within the time and space limits Rolling Loud authorized these security guards to carry out their duties. Furthermore, at all times the excessive and

unlawful use of force by IPS' security guards acting for Rolling Loud, which resulted in Portalatin being struck and injured, was activated by the express purpose of serving the interests, instructions, and goals of Rolling Loud.

66. Accordingly, Rolling Loud is vicariously liable to Portalatin for the unlawful, and grossly negligent conduct, of IPS' security guards and their use of excessive physical force resulting in injury to Portalatin.

67. As a direct and proximate result and/or concurring cause of the negligence of Rolling Loud as described above, Portalatin, suffered great bodily injury and resulting physical pain and suffering, inability to prove his claim due to loss and/or destruction of evidence, disability, disfigurement, suffering and disability, loss of the capacity for the enjoyment of life, expensive hospitalization, medical nursing care and treatment, loss of past earnings, loss of the ability to earn money in the future, and aggravation of an existing condition. The losses are permanent in nature, and the Portalatin will suffer said losses in the future.

68. Furthermore, the negligent acts of Rolling Loud have combined and resulted in an indivisible harm to Plaintiff, including bodily injury and resulting pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

69. The actions of the Rolling Loud further caused a bodily injury, to the Plaintiff Portalatin which resulted in an aggravation of an existing disease or physical defect and/or activation of a latent disease or physical defect, which condition cannot be said would have existed apart from the injury, and therefore Plaintiff is entitled for damages for the entire injury or condition suffered.

WHEREFORE, Portalatin, demands jury trial and judgment for general damages, compensatory damages, special damages, against Rolling Loud in which Portalatin alleges in good faith exceed Seventy-Five Thousand ($75,000.00) Dollars, excluding taxable costs, and whatever other relief this Court deems just and proper.

**COUNT 6**
(Vicarious Liability – Rolling Loud)
[Royster]

70. Plaintiff repeats and realleges paragraphs 1-9.

71. At all times material Rolling Loud was the operator, promoter and sponsor of the 2024 Rolling Loud Festival and Concert, on December 14-15, 2024, which took place at the Hard Rock Stadium located at 347 Don Shula Dr., Suite 102 Miami Gardens, FL 33056 (the "subject premises").

72. Additionally, Rolling Loud through its company and officers' primary business is the promotion, staging, marketing, coordination, and hosting of large-scale music festivals such as the 2024 Rolling Loud Festival and Concert which it has hosted on the subject premises and throughout the country for several years.

73. Prior to the subject incident, Rolling Loud, entered into contracts and agreements with the owner of the subject premises and various municipalities including but not limited to Miami-Dade County and the City of Miami Gardens, Florida, which required it to provide adequate security and crowd control for the subject premises for the duration of the 2024 Rolling Loud Festival and Concert.

74. Pursuant to these nondelegable duties which Rolling Loud assumed by contract and by operation of statute and ordinance; Rolling Loud hired IPS to which it delegated its responsibilities and duties to provide security for the subject premises.

75. Accordingly at all times material Rolling Loud employed, directed or controlled, IPS' activities at the Rolling Loud Festival, and at all times IPS was acting in the course and scope of its agency

relationship with Rolling Loud for the express goal of furthering the interests and purpose of Rolling Loud's successful staging and operation of the 2024 Rolling Loud Festival and in order to carry out Rolling Loud's obligations to provide security and crowd control for the subject premises; based on the following facts;

a. IPS was the official provider of security and crowd control for the Rolling Loud Festival;

b. Pursuant to its agreement to provide security services for Rolling Loud at the Rolling Loud Festival, IPS as a licensed security agency under Fla. Statutes Ch. 493, agreed to provide security guards who at all times were acting pursuant to the direction and instructions of Rolling Loud as the owner and operator of the Rolling Loud Festival.

c. Rolling Loud provided the required security plans and security protocol which IPS was required to follow for the duration of the Rolling Loud Festival.

d. The amount of security guards, their location, and their work schedule, and the manner in which security was to be provided, was at all times subject to the direction of Rolling Loud, as Rolling Loud had been required to comply with specific security and crowd control requirements by the owner of the venue and city and county municipalities which had granted its operating permit.

76. On or about December 14-15, 2024, Royster was lawfully on the subject premises as a business invitee when IPS security guards acting in the course and scope of their agency relationship with Rolling Loud used excessive and unlawful force in carrying out their duties resulting in severe injuries to Royster when he was struck and injured by various security guards unnecessarily and without provocation. At all times this conduct on the part of these security guards was perpetrated with the express purpose of furthering the interests of their principal, Rolling Loud.

77. At all times material IPS's security guards' actions while acting for and on behalf of Rolling Loud in attempting to physically restrain, strike, or subdue Royster, was the express activity Rolling Loud had hired IPS to perform, and did occur during the Rolling Loud Festival and on the subject premises of the Hard Rock Stadium which was well within the time and space limits Rolling Loud authorized these security guards to carry out their duties. Furthermore, at all times the excessive and unlawful use of force by IPS' security guards acting for Rolling Loud, which resulted in Royster being struck and injured, was activated by the express purpose of serving the interests, instructions, and goals of Rolling Loud.

78. Accordingly, Rolling Loud is vicariously liable to Royster for the unlawful, and grossly negligent conduct, of IPS' security guards and their use of excessive physical force resulting in injury to Royster.

79. As a direct and proximate result and/or concurring cause of the negligence of Rolling Loud as described above, Royster, suffered great bodily injury and resulting physical pain and suffering, inability to prove his claim due to loss and/or destruction of evidence, disability, disfigurement, suffering and disability, loss of the capacity for the enjoyment of life, expensive hospitalization, medical nursing care and treatment, loss of past earnings, loss of the ability to earn money in the future, and aggravation of an existing condition. The losses are permanent in nature, and the Royster will suffer said losses in the future.

80. Furthermore, the negligent acts of Rolling Loud have combined and resulted in an indivisible harm to Plaintiff, including bodily injury and resulting pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

81. The actions of the Rolling Loud further caused a bodily injury, to the Plaintiff Royster which resulted in an aggravation of an existing disease or physical defect and/or activation of a latent disease or physical defect, which condition cannot be said would have existed apart from the injury, and therefore Plaintiff is entitled for damages for the entire injury or condition suffered.

WHEREFORE, Royster, demands jury trial and judgment for general damages, compensatory damages, special damages, against Rolling Loud in which Royster alleges in good faith exceed Seventy-Five Thousand ($75,000.00) Dollars, excluding taxable costs, and whatever other relief this Court deems just and proper.

**COUNT 7**
(Negligence – Rolling Loud)
[Portalatin]

82. Plaintiff repeats and realleges paragraphs 1-9.

83. At all times material Rolling Loud was the operator, promoter and sponsor of the 2024 Rolling Loud Festival and Concert, on December 14-15, 2024, which took place at the Hard Rock Stadium located at 347 Don Shula Dr., Suite 102 Miami Gardens, FL 33056 (the "subject premises").

84. Additionally, Rolling Loud through its company and officers' primary business is the promotion, staging, marketing, coordination, and hosting of large-scale music festivals such as the Rolling Loud Festival and Concert which it has hosted on the subject premises and throughout the country for several years.

85. Accordingly, as an operator of a business primarily engaged in the amusement and entertainment of individuals, Rolling Loud was required to exercise a higher degree of care than is required of other commercial establishments[5], including but not limited to:

a. Using ordinary care in keeping the premises in a reasonably safe condition;

b. correct dangerous conditions of which Rolling Loud knew or should reasonably have known, and

c. Take reasonable security measures to prevent foreseeable criminal activity and safeguard business invitees on the premises from such foreseeable criminal activity;

d. Provide properly trained and qualified security personnel for the duration of the 2024 Rolling Loud Festival and Concert.

e. Ensuring that the security deployment and life safety plan was complied with for the duration of the Event;

86. Rolling Loud breached the foregoing duties when on or about December 14-15, 2024, it engaged in the following acts of negligence, including

a. Failing to take reasonable measures to provide competent and qualified security personnel despite being aware of numerous instances of assault and related criminal activities which had occurred at previous Rolling Loud Festivals.

b. Failing to provide adequately trained and qualified security personnel.

c. Failing to properly instruct and supervise its security personnel to refrain from assaults and excessive force.

d. Failing to intervene, interrupt, or report, the attack on the Plaintiff.

---

[5]*See Mosqueda v. Paramount Enters., Inc.*, 111 So. 2d 63, 64 (Fla. 3d DCA 1959); *Walt Disney World Co. v. Goode*, 501 So. 2d 622, 623 (Fla. 5th DCA 1986) (*quoting Wells v. Palm Beach Kennel Club*, 160 Fla. 502, 35 So.2d 720 (1948)).

e. Permitting unlicensed and/or unqualified security personnel to conduct their activities on the subject premises.

87. As a direct and proximate result of the foregoing acts of negligence on or about December 14-15, 2024, Portalatin was lawfully on the subject premises as a business invitee when security guards used excessive and unlawful force in carrying out their duties resulting in severe injuries to Portalatin when he was struck and injured by various security guards unnecessarily and without provocation.

88. As a direct and proximate result and/or concurring cause of the negligence of Rolling Loud as described above, Portalatin, suffered great bodily injury and resulting physical pain and suffering, inability to prove his claim due to loss and/or destruction of evidence, disability, disfigurement, suffering and disability, loss of the capacity for the enjoyment of life, expensive hospitalization, medical nursing care and treatment, loss of past earnings, loss of the ability to earn money in the future, and aggravation of an existing condition. The losses are permanent in nature, and the Portalatin will suffer said losses in the future.

89. Furthermore, the negligent acts of Rolling Loud have combined and resulted in an indivisible harm to Plaintiff, including bodily injury and resulting pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

90. The actions of the Rolling Loud further caused a bodily injury, to the Plaintiff Portalatin which resulted in an aggravation of an existing disease or physical defect and/or activation of a latent disease or physical defect, which condition cannot be said would have existed apart from the injury, and therefore Plaintiff is entitled for damages for the entire injury or condition suffered.

WHEREFORE, Portalatin, demands jury trial and judgment for general damages, compensatory damages, special damages, against Rolling Loud in which Portalatin alleges in good faith exceed Seventy-Five Thousand ($75,000.00) Dollars, excluding taxable costs, and whatever other relief this Court deems just and proper.

**COUNT 8**
(Negligence – Rolling Loud)
[Royster]

91. Plaintiff repeats and realleges paragraphs 1-9.

92. At all times material Rolling Loud was the operator, promoter and sponsor of the 2024 Rolling Loud Festival and Concert, on December 14-15, 2024, which took place at the Hard Rock Stadium located at 347 Don Shula Dr., Suite 102 Miami Gardens, FL 33056 (the "subject premises").

93. Additionally, Rolling Loud through its company and officers' primary business is the promotion, staging, marketing, coordination, and hosting of large-scale music festivals such as the Rolling Loud Festival and Concert which it has hosted on the subject premises and throughout the country for several years.

94. Accordingly, as an operator of a business primarily engaged in the amusement and entertainment of individuals Rolling Loud. was required to exercise a higher degree of care than is required of other commercial establishments, including but not limited to:

a. Using ordinary care in keeping the premises in a reasonably safe condition;
b. correct dangerous conditions of which Rolling Loud knew or should reasonably have known, and
c. Take reasonable security measures to prevent foreseeable criminal activity and safeguard business invitees on the premises from such foreseeable criminal activity;

d. Provide properly trained and qualified security personnel for the duration of the 2024 Rolling Loud Festival and Concert.

e. Ensuring that the security deployment and life safety plan was complied with for the duration of the Event;

95. Rolling Loud breached the foregoing duties when on or about December 14-15, 2024, it engaged in the following acts of negligence, including

a. Failing to take reasonable measures to provide competent and qualified security personnel despite being aware of numerous instances of assault and related criminal activities which had occurred at previous Rolling Loud Festivals.

b. Failing to provide adequately trained and qualified security personnel.

c. Failing to properly instruct and supervise its security personnel to refrain from assaults and excessive force.

d. Failing to intervene, interrupt, or report, the attack on the Plaintiff.

e. Permitting unlicensed and/or unqualified security personnel to conduct their activities on the subject premises.

96. As a direct and proximate result of the foregoing acts of negligence on or about December 14-15, 2024, Royster was lawfully on the subject premises as a business invitee when security guards used excessive and unlawful force in carrying out their duties resulting in severe injuries to Royster when he was struck and injured by various security guards unnecessarily and without provocation.

97. As a direct and proximate result and/or concurring cause of the negligence of Rolling Loud as described above, Royster, suffered great bodily injury and resulting physical pain and suffering, inability to prove his claim due to loss and/or destruction of evidence, disability, disfigurement, suffering and disability, loss of the capacity for the enjoyment of life, expensive hospitalization, medical nursing

care and treatment, loss of past earnings, loss of the ability to earn money in the future, and aggravation of an existing condition. The losses are permanent in nature, and the Royster will suffer said losses in the future.

98. Furthermore, the negligent acts of Rolling Loud have combined and resulted in an indivisible harm to Plaintiff, including bodily injury and resulting pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

99. The actions of the Rolling Loud further caused a bodily injury, to the Plaintiff Royster which resulted in an aggravation of an existing disease or physical defect and/or activation of a latent disease or physical defect, which condition cannot be said would have existed apart from the injury, and therefore Plaintiff is entitled for damages for the entire injury or condition suffered.

WHEREFORE, Royster, demands jury trial and judgment for general damages, compensatory damages, special damages, against Rolling Loud in which Royster alleges in good faith exceed Seventy-Five Thousand ($75,000.00) Dollars, excluding taxable costs, and whatever other relief this Court deems just and proper.

**COUNT 9**
(Negligence – SFS)
[Portalatin]

100. Plaintiff repeats and re-alleges paragraphs 1-9.

101. Beginning in 2018 SFS leased, rented, or otherwise permitted Rolling Loud to use the Hard Rock Stadium in Miami Gardens, Florida, and its surrounding areas as the location for the Rolling Loud Festival including the subject 2024 Rolling Loud Festival and Concert.

102. At all times the Hard Rock Stadium in Miami Gardens, Florida was operated by SFS, and was held open to the public as a place of amusement and entertainment. Thus SFS as an operator of a business primarily engaged in the amusement and entertainment of individuals, SFS was required to exercise a higher degree of care than is required of other commercial establishments.

103. On or about December 14-15, 2024, SFS granted permission for the subject premises which it owned, operated, and controlled to be used to stage the 2024 Rolling Loud Festival and Concert. Despite granting Rolling Loud permission to use the premises SFS maintained a nondelegable duty of care to safeguard and operate the premises utilizing reasonable care. In addition, SFS maintained a high degree of control and supervision over the planning and operation of the 2024 Rolling Loud Festival including but not limited to;

a. Controlling access to the subject premises;

b. Determining when and if the 2024 Rolling Loud Festival would occur;

c. Determining and approving which security companies would be allowed to provide security for the 2024 Rolling Loud Festival, including the total number and qualification of any security guards;

d. Reviewing and approving the security plan;

104. Accordingly, SFS had a nondelegable duty as the owner and operator of the subject premises to;

a. Use ordinary care in keeping the premises in a reasonably safe condition;

b. Ensure that the operator of the 2024 Rolling Loud Festival complied with all applicable laws and provided properly trained and competent security for the duration of the event.

c. correct dangerous conditions of which SFS knew or should reasonably have known, and

d. Take reasonable security measures to prevent foreseeable criminal activity and safeguard business invitees on the premises from such foreseeable criminal activity;

e. Provide properly trained and qualified security personnel for the duration of the 2024 Rolling Loud Festival and Concert.

f. Ensure that the security deployment and life safety plan was complied with for the duration of the Event;

105. SFS breached the foregoing duties when on or about December 14-15, 2024, it engaged in the following acts of negligence, including

a. Failing to take reasonable measures to provide competent and qualified security personnel despite being aware of numerous instances of assault and related criminal activities which had occurred at previous Rolling Loud Festivals.

b. Failing to provide adequately trained and qualified security personnel.

c. Failing to properly instruct and supervise its security personnel to refrain from assaults and excessive force.

d. Failing to intervene, interrupt, or report, the attack on the Plaintiff.

e. Permitting unlicensed and/or unqualified security personnel to conduct their activities on the subject premises.

106. As a direct and proximate result of the foregoing acts of negligence on or about December 14-15, 2024, Portalatin was lawfully on the subject premises as a business invitee when security guards used excessive and unlawful force in carrying out their duties resulting in severe injuries to Portalatin when he was struck and injured by various security guards unnecessarily and without provocation.

107. As a direct and proximate result and/or concurring cause of the negligence of SFS as described above, the Portalatin, suffered great bodily injury and resulting physical pain and suffering,

inability to prove his claim due to loss and/or destruction of evidence, disability, disfigurement, suffering and disability, loss of the capacity for the enjoyment of life, expensive hospitalization, medical nursing care and treatment, loss of past earnings, loss of the ability to earn money in the future, and aggravation of an existing condition. The losses are permanent in nature, and the Portalatin will suffer said losses in the future.

108. Furthermore, the negligent acts of SFS have combined and resulted in an indivisible harm to Plaintiff, including bodily injury and resulting pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

109. The actions of SFS further caused a bodily injury, to the Plaintiff Portalatin which resulted in an aggravation of an existing disease or physical defect and/or activation of a latent disease or physical defect, which condition cannot be said would have existed apart from the injury, and therefore Plaintiff is entitled for damages for the entire injury or condition suffered.

WHEREFORE, Portalatin, demands jury trial and judgment for general damages, compensatory damages, special damages, against SFS in which Portalatin alleges in good faith exceed Seventy-Five Thousand ($75,000.00) Dollars, excluding taxable costs, and whatever other relief this Court deems just and proper.

**COUNT 10**
(Negligence – SFS)
[Royster]

110. Plaintiff repeats and re-alleges paragraphs 1-9.

111. Beginning in 2018 SFS leased, rented, or otherwise permitted Rolling Loud to use the Hard Rock Stadium in Miami Gardens, Florida, and its surrounding areas as the location for the Rolling Loud Festival including the subject 2024 Rolling Loud Festival and Concert.

112. At all times the Hard Rock Stadium in Miami Gardens, Florida as operated by SFS, and was held open to the public as a place of amusement and entertainment. Thus SFS as an operator of a business primarily engaged in the amusement and entertainment of individuals, SFS was required to exercise a higher degree of care than is required of other commercial establishments.

113. On or about December 14-15, 2024, SFS granted permission for the subject premises which it owned, operated, and controlled to be used to stage the 2024 Rolling Loud Festival and Concert. Despite granting Rolling Loud permission to use the premises SFS maintained a nondelegable duty of care to safeguard and operate the premises utilizing reasonable care. In addition, SFS maintained a high degree of control and supervision over the planning and operation of the 2024 Rolling Loud Festival including but not limited to;

a. Controlling access to the subject premises;

b. Determining when and if the 2024 Rolling Loud Festival would occur;

c. Determining and approving which security companies would be allowed to provide security for the 2024 Rolling Loud Festival, including the total number and qualification of any security guards;

d. Reviewing and approving the security plan;

114. Accordingly, SFS had a nondelegable duty as the owner and operator of the subject premises to;

a. Use ordinary care in keeping the premises in a reasonably safe condition;

b. Ensure that the operator of the 2024 Rolling Loud Festival complied with all applicable laws and provided properly trained and competent security for the duration of the event.

c. correct dangerous conditions of which SFS knew or should reasonably have known, and

d. Take reasonable security measures to prevent foreseeable criminal activity and safeguard business invitees on the premises from such foreseeable criminal activity;

e. Provide properly trained and qualified security personnel for the duration of the 2024 Rolling Loud Festival and Concert.

f. Ensure that the security deployment and life safety plan was complied with for the duration of the Event;

115. SFS breached the foregoing duties when on or about December 14-15, 2024, it engaged in the following acts of negligence, including

a. Failing to take reasonable measures to provide competent and qualified security personnel despite being aware of numerous instances of assault and related criminal activities which had occurred at previous Rolling Loud Festivals.

b. Failing to provide adequately trained and qualified security personnel.

c. Failing to properly instruct and supervise its security personnel to refrain from assaults and excessive force.

d. Failing to intervene, interrupt, or report, the attack on the Plaintiff.

e. Permitting unlicensed and/or unqualified security personnel to conduct their activities on the subject premises.

116. As a direct and proximate result of the foregoing acts of negligence on or about December 14-15, 2024, Royster was lawfully on the subject premises as a business invitee when security guards used excessive and unlawful force in carrying out their duties resulting in severe injuries to Royster when he was struck and injured by various security guards unnecessarily and without provocation.

117. As a direct and proximate result and/or concurring cause of the negligence of SFS as described above, Royster, suffered great bodily injury and resulting physical pain and suffering, inability to prove his claim due to loss and/or destruction of evidence, disability, disfigurement, suffering and disability, loss of the capacity for the enjoyment of life, expensive hospitalization, medical nursing care and treatment, loss of past earnings, loss of the ability to earn money in the future, and aggravation of an existing condition. The losses are permanent in nature, and the Royster will suffer said losses in the future.

118. Furthermore, the negligent acts of SFS have combined and resulted in an indivisible harm to Plaintiff, including bodily injury and resulting pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

119. The actions of SFS further caused a bodily injury, to the Plaintiff Royster which resulted in an aggravation of an existing disease or physical defect and/or activation of a latent disease or physical defect, which condition cannot be said would have existed apart from the injury, and therefore Plaintiff is entitled for damages for the entire injury or condition suffered.

WHEREFORE, Royster, demands jury trial and judgment for general damages, compensatory damages, special damages, against SFS in which Royster alleges in good faith exceed Seventy-Five Thousand ($75,000.00) Dollars, excluding taxable costs, and whatever other relief this Court deems just and proper.

Served with the Summons:

FLORIDA LEGAL, LLC
Attorneys for Plaintiff
150 SE 2nd Avenue
Suite 1001
Miami, FL 33131
(t) (305) 901-2209
(f) (786) 870-4030

/s/ Raymond R. Dieppa
Raymond R. Dieppa, Esq.
Florida Bar No. 27690
E-Mail: ray.dieppa@floridalegal.law